**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MICHAEL D. WARNER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-943** |
| **BRAD E. COX, ET AL.** | **SECTION "O"** |

**ORDER AND REASONS**

Before the Court in this civil action and adversary proceeding are a combined motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6),[1] and three motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2).[2]

The Chapter 7 trustee of seven jointly administered debtor estates sued twenty-six defendants in this Court on forty-seven counts, alleging that the officers who ran a Louisiana oil-and-gas business drained it of more than a hundred million dollars for the benefit of themselves, their families, and a network of affiliated companies and trusts, leaving vendors and other creditors unpaid. The bankruptcy cases are pending in Texas, where most of the defendants live, are organized, or keep their offices. Seizing on that geography, one defendant argues that only the bankruptcy court in Texas may hear the Trustee's claims at all. Three groups of defendants argue that this Court cannot reach them because they lack contacts with Louisiana.

Neither argument succeeds. The first rests on a statute that confers jurisdiction on district courts rather than bankruptcy courts, and reading it as

[1] ECF No. 75.
[2] ECF Nos. 30, 36, 85.

defendant urges would nullify the surrounding grant of jurisdiction and render the bankruptcy venue statutes incoherent. The second rests on a framework that does not govern this proceeding. Because this is a bankruptcy proceeding, the Bankruptcy Rules govern it. Federal Rule of Bankruptcy Procedure 7004 authorizes service of process anywhere in the United States in a proceeding related to a bankruptcy case, whether that proceeding is pending before a bankruptcy judge or before a district judge. Where service reaches nationwide, the forum is the United States, and contacts with Louisiana are not the question. Every movant is present in the United States, and most have said so under oath in the very declarations they filed to defeat jurisdiction.

Accordingly, for these reasons and those that follow, the Court **DENIES IN PART** the combined motion, denying the Rule 12(b)(1) portion and reserving the Rule 12(b)(6) portion, and **DENIES** the three Rule 12(b)(2) motions.

## I. BACKGROUND

Because this is the Court's first substantive ruling in this proceeding, and because several related motions remain pending, the Court sets out the background at some length.

### A. Seven Affiliated Oil and Gas Companies Filed for Bankruptcy in 2023, and Their Cases Are Now Pending Under Chapter 7 in the Southern District of Texas.

Cox Operating L.L.C. and certain affiliates were established in 2003 to acquire oil and gas leases and to operate producing wells in Louisiana state waters and on

the Outer Continental Shelf of the Gulf of Mexico, primarily adjacent to Louisiana.[3] By 2023 the group operated more than 750 wells across 470 structures in 60 fields.[4] Cox Operating served as the operator for wells and related structures owned by the other entities in the group and provided them operational, administrative, and financial services.[5] It listed its headquarters in Dallas, Texas, though its day-to-day operations were run from an operational headquarters in New Orleans, Louisiana, until shortly before the bankruptcy filings.[6]

On May 12, 2023, four trade creditors filed an involuntary Chapter 7 petition against Cox Operating in the United States Bankruptcy Court for the Eastern District of Louisiana. A fifth creditor joined the next day. Together they asserted claims exceeding $2.85 million.[7]

Two days later, Cox Operating and six affiliates filed voluntary Chapter 11 petitions in the United States Bankruptcy Court for the Southern District of Texas.[8] The seven debtors are MLCJR LLC and M21K, LLC, both Texas limited liability companies; EPL Oil & Gas, LLC, Energy XXI Gulf Coast, LLC, and Energy XXI GOM LLC, all Delaware limited liability companies; and Cox Operating L.L.C. and Cox Oil

---

[3] ECF No. 12 ¶ 71.
[4] *Id.* ¶ 74.
[5] *Id.* ¶¶ 74, 77.
[6] *Id.* ¶¶ 75–76.
[7] *Id.* ¶ 63; Ch. 7 Involuntary Pet. at 2, *In re Cox Operating, L.L.C.*, No. 23-10734 (Bankr. E.D. La. May 12, 2023), Dkt. No. 1; Joinder Involuntary Ch. 7 Bankr. Pet. at 1, No. 23-10734, Dkt. No. 3.
[8] ECF No. 12 ¶ 64; *In re MLCJR LLC*, No. 23-90324 (Bankr. S.D. Tex. May 14, 2023); *In re M21K, LLC*, No. 23-90325 (Bankr. S.D. Tex. May 14, 2023); *In re EPL Oil & Gas, LLC*, No. 23-90326 (Bankr. S.D. Tex. May 14, 2023); *In re Cox Operating L.L.C.,* No. 23-90327 (Bankr. S.D. Tex. May 14, 2023); *In re Cox Oil Offshore, L.L.C.*, No. 23-90328 (Bankr. S.D. Tex. May 14, 2023); *In re Energy XXI Gulf Coast, LLC*, No. 23-90329 (Bankr. S.D. Tex. May 14, 2023); *In re Energy XXI GOM LLC*, No. 23-90330 (Bankr. S.D. Tex. May 14, 2023).

Offshore, L.L.C., both Louisiana limited liability companies.[9] The bankruptcy court consolidated the seven cases for joint administration on May 16, 2023, under the caption *In re MLCJR LLC, et al.*, No. 23-90324 (CML).[10]

On May 23, 2023, the Louisiana bankruptcy court transferred the involuntary case to the Southern District of Texas. *See In re Cox Operating, LLC*, 652 B.R. 49, 59–60 (Bankr. E.D. La. 2023).[11] It found venue proper in both Texas and Louisiana but concluded that transferring the case was in the interest of justice.[12] *Id.* at 54–55, 59. The Texas bankruptcy court entered an agreed order incorporating the transfer order and dismissing the now-transferred involuntary case on June 28, 2023.[13]

The debtors sold substantially all of their producing assets by February 2024 and moved to convert their cases to Chapter 7, which the bankruptcy court granted on February 28, 2024.[14] Plaintiff Michael D. Warner was elected Chapter 7 trustee of the seven estates and qualified on May 8, 2024.[15]

---

[9] ECF No. 12 ¶¶ 19–26; Ch. 11 Voluntary Pet. at 1, 5–6, *In re MLCJR LLC*, No. 23-90324, Dkt. No. 1; Ch. 11 Voluntary Pet. at 1, 5–6, *In re M21K, LLC*, No. 23-90325, Dkt. No. 1; Ch. 11 Voluntary Pet. at 1, 5–7, *In re EPL Oil & Gas, LLC*, No. 23-90326, Dkt. No. 1; Ch. 11 Voluntary Pet. at 1, 5–6, *In re Cox Operating L.L.C.,* No. 23-90327, Dkt. No. 1; Ch. 11 Voluntary Pet. at 1, 5–6, *In re Cox Oil Offshore, L.L.C.*, No. 23-90328, Dkt. No. 1; Ch. 11 Voluntary Pet. at 1, 5–6, *In re Energy XXI Gulf Coast, LLC*, No. 23-90329, Dkt. No. 1; Ch. 11 Voluntary Pet. at 1, 5–6, *In re Energy XXI GOM, LLC*, No. 23-90330, Dkt. No. 1.

[10] ECF No. 12 ¶ 65; Order at 3, *In re MLCJR LLC*, No. 23-90324, Dkt. No. 103.

[11] ECF No. 30-4.

[12] ECF No. 30-4 at 5–6, 14–15; *see also* ECF No. 12 ¶ 66.

[13] ECF No. 12 ¶ 66; Order at 2–3, No. 23-90324, Dkt. No. 526.

[14] ECF No. 12 ¶¶ 67–68; Debtors' Emerg. Mot. to Convert ¶¶ 1–3, 15, No. 23-90324, Dkt. No. 1661; Order at 2–5, No. 23-90324, Dkt. No. 1720.

[15] ECF No. 12 ¶¶ 16, 69–70; Order at 2, No. 23-90324, Dkt. No. 1919; Notice of Bond & Acceptance of Election, No. 23-90324, Dkt. No. 1996.

### B. The Trustee Filed This Action Alleging That Four Officers and Directors Looted Cox Operating for Their Own Benefit and for the Benefit of Affiliated Entities and Trusts.

The Trustee filed this action in this Court on May 12, 2025, styling it both a "Civil Action and Adversary Proceeding."[16] The Operative Complaint is the Second Amended Adversary Complaint and Jury Demand, as amended in three particulars by the Third Amended and Supplemental Adversary Complaint and Jury Demand.[17] It pleads forty-seven counts against twenty-six named defendants and fifteen John Doe defendants, and it sorts the named defendants into three groups.

The **Officer & Director Defendants** are four individuals said to have run Cox Operating and its affiliates: Brad E. Cox, Chairman of the Board of Cox Operating and of each affiliate entity; Craig Sanders, President and Chief Executive Officer of Cox Operating, each debtor, and each affiliate entity; Vincent DeVito, General Counsel and Executive Vice President of the same entities; and Joseph Winkler, Controller of Cox Operating, with access to the financial records of each debtor and affiliate.[18] Brad Cox, Sanders, and Winkler are alleged to reside in Texas,

---

[16] ECF No. 1; ECF No. 12 ¶ 1.

[17] ECF Nos. 12, 12-1, *as amended by* ECF No. 29. The Third Amended and Supplemental Adversary Complaint ("TAC") states that the Trustee submits it "for the sole purposes of correcting (1) a misnomer with respect to the trustee of the Bradley Edwin Cox Trust . . ., and (2) the description of the Crespi Estate," and it amends paragraph 32, the Exhibit A glossary entry for the Bradley Edwin Cox Trust, and paragraph 215. ECF No. 29 at 1–2. It is a partial amendment and does not supersede the Second Amended Complaint ("SAC"). Winkler contends that the Third Amended Complaint is the operative pleading. ECF No. 75-1 ¶¶ 2, 7. The Nonresident Cox Defendants take the opposite and correct view. ECF No. 30-1 at 2 n.1 ("The Motion to Amend seeks leave to correct a misnomer of a defendant and to revise the description of a property alleged in the TAC. Otherwise, the SAC is the operative complaint . . . ."); *see also* ECF No. 59 at 4 n.3; ECF No. 93 at 3. The Court also assumes the SAC's references to Exhibits B, C, and D, *e.g.,* ECF No. 12 at 6 n.4, 66–67, relate to those that were filed with the First Amended Complaint and not refiled. *See* ECF Nos. 3-2, 3-3, 3-4.

[18] ECF No. 12 ¶¶ 27–31.

and DeVito in Virginia.[19]

The **Trust Defendants** are three Texas trusts, sued through their trustees. The sole beneficiary of the Bradley Edwin Cox Trust is Brad Cox. The sole beneficiary of the Charlee Lochridge Cox Dynasty Trust is Brad Cox's minor child. The sole beneficiary of the Edwin L. Cox "B" Trust is Brad Cox, and that trust is the sole member of three of the defendant entities.[20]

The **Affiliate Defendants** are twenty-one entities that the Officer & Director Defendants are said to have created and controlled, and that received transfers from Cox Operating.[21] They are organized under the laws of Texas, Louisiana, or Delaware, except for two whose state of organization the Trustee has not identified.[22]

Three names in this case are similar and are not interchangeable. **Cox Oil Offshore, L.L.C.** is a Louisiana entity and one of the seven debtors, so the Trustee sues on its behalf. **Cox Oil LLC** is a Delaware entity and a defendant. **Cox Oil and Gas LLC** is a Texas entity and a different defendant.[23]

According to the Operative Complaint,[24] Cox Operating and the other debtors were dominated and controlled by the four Officer & Director Defendants, who

[19] *Id.* ¶¶ 27–30.

[20] *Id.* ¶¶ 32–35. Plaintiff substituted William Graham for the Arden Trust Company as the named trustee of the Bradley Edwin Cox Trust. ECF No. 29 at 2. The Arden Trust Company nevertheless remains a named defendant with counsel enrolled. It joined a consent motion for an extension of time before the substitution, *see* ECF No. 16 at 2, and has filed nothing since.

[21] ECF No. 12 ¶¶ 36–57.

[22] *Id.* ¶¶ 53–54 (stating that the Trustee "has not yet determined whether [RCL Pelican or RC L S Bay LLC] w[ere] legally formed, and if so, under the laws of which State").

[23] *Id.* ¶¶ 25, 41–42.

[24] The Court recites these allegations to explain the nature of this suit. It does not decide whether any of them states a claim, and nothing in this Order should be read as a finding on the merits. Motions raising that question are pending and are not resolved here. *See* ECF Nos. 34, 35, 84, and the Rule 12(b)(6) portion of ECF No. 75.

ignored corporate formalities and fiduciary duties and used Cox Operating as a "personal slush fund."[25] By January 1, 2017, Cox Operating was insolvent, because its assets consisted largely of related-party receivables of dubious value. Those receivables grew from roughly $41 million in early 2017 to more than $100 million and were worthless.[26]

During the same period, Cox Operating paid Brad Cox a base salary of $950,000 per month; made quarterly distributions to him described as returns on equity in the amount of his federal income tax obligations, despite the absence of flow-through taxable income; and made equity distributions exceeding $180 million to Brad Cox and other defendants at a time when no debtor had net revenues sufficient to permit lawful distributions.[27] Each distribution path led back to Brad Cox.[28] Cox Operating also funded the purchase, renovation, and upkeep of three luxury properties held by defendant entities and trusts: an estate in Dallas held by the Dynasty Trust, an approximately 15,000-acre ranch near Athens, Texas, held in part by EasTex Deer Meadow, LLC, and a chalet in Vail, Colorado held by LSC 27, LLC or the Dynasty Trust.[29]

Lacking working capital, Cox Operating ran what the Trustee alleges was a "Vendor Ponzi scheme," under which revenue attributable to one vendor's goods and services was used to pay other overdue vendors who threatened to stop performing.[30]

---

[25] ECF No. 12 ¶¶ 3–4, 9.
[26] *Id.* ¶¶ 7, 78.
[27] *Id.* ¶¶ 11, 81–82, 87–88.
[28] *Id.* ¶¶ 83–86.
[29] *Id.* ¶¶ 27, 89.
[30] *Id.* ¶¶ 109–15.

Vendor trade debt grew from roughly $21 million at the end of 2018 to more than $144 million by mid-2021, with an increasing share more than ninety days past due.[31] As of the bankruptcy filings, the debtors scheduled trade debts exceeded $250 million, secured lender debt exceeded $200 million, and surety bond and plugging-and-abandonment obligations exceeded $1 billion.[32]

Counts One through Five assert claims for breach of fiduciary duty, aiding and abetting those breaches, civil conspiracy, single-business-enterprise liability, and enforcement of a commitment to fund the debtors' operations. Counts Six through Forty-Seven seek declaratory relief and the avoidance and recovery of transfers under state and federal law.

### C. The Trustee Effectuates Service of Process, and Defendants Move to Dismiss Under Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), and to Transfer Venue to the Southern District of Texas.

The Trustee pleads that this Court has jurisdiction under 28 U.S.C. § 1334 and that this proceeding is both core and non-core under 28 U.S.C. § 157(b)(2)(A), (B), (H), and (O).[33] He pleads venue under 28 U.S.C. § 1409(c).[34] And he pleads that the Court may exercise personal jurisdiction over each defendant either because the defendant is a Louisiana citizen or because it has minimum contacts with Louisiana, and that the Court may in any event "assert personal jurisdiction pursuant to 28 U.S.C. § 1334 and effectuate nationwide service of process pursuant [to] Bankruptcy Rule 7004."[35]

---

[31] *Id.* ¶¶ 112–13.
[32] *Id.* ¶ 116.
[33] *Id.* ¶ 60.
[34] *Id.* ¶ 61.
[35] *Id.* ¶ 62.

The Trustee served summonses and the pleading by mail.[36] No defendant has moved to dismiss for insufficient process or insufficient service of process.

The defendants who have appeared[37] organize themselves differently than the Operative Complaint does. The Court uses the parties' own labels.

The **Cox Defendants** are seventeen defendants represented by common counsel: Brad Cox, DeVito, and fifteen Affiliate Defendants.[38] All seventeen have moved to transfer venue and to dismiss for failure to state a claim.[39] A smaller subset of ten—the **Nonresident Cox Defendants**—moved separately to dismiss for lack of personal jurisdiction.[40] The remaining seven Cox Defendants did not.

The **Graham Defendants** are three Trust Defendants sued through their common trustee and five Affiliate Defendants: William Graham, in his capacities as named trustee of the Bradley Edwin Cox Trust, named co-trustee of the Charlee Lochridge Cox Dynasty Trust, and named trustee of the Edwin L. Cox "B" Trust; EasTex Deer Meadow, LLC; WIN Management, LLC; Windward Capital Assets, LLC; RCL Capital Management LLC – Series No. 10 (Southern Bay); and RCL Capital

[36] ECF Nos. 4, 5, 6, 7, 13, 18, 19, 42, 43, 46, 47, 48; ECF No. 49 at 3–4.

[37] CLS Development, LLC, an Affiliate Defendant, was served on September 15, 2025, and has not appeared. ECF No. 48.

[38] *See, e.g.*, ECF No. 30-2 ¶ 2; ECF No. 83 at 1. The fifteen Affiliate Defendants are Cox Interests, LLC; Cox Investment Partners, LP; Cox Gathering LLC; Cox Management Dallas, LLC; Cox Oil and Gas, LLC; Cox Oil, LLC; CW Facilities, LLC; Dallas Estate Management, LLC; Flow Line Transportation, LLC; Half Moon Lake, L.L.C.; Lochridge Energy Services P&A, LLC; LSC 27 LLC; Phoenix Petro Services, LLC; Proteus Energy LLC; and Quarantine Bay LLC.

[39] ECF Nos. 31, 34.

[40] ECF No. 30 at 2; ECF No. 30-1 at 1. The Nonresident Cox Defendants are Brad E. Cox; Vincent DeVito; Cox Investment Partners, LP; Cox Management Dallas, LLC; Cox Oil and Gas, LLC; CW Facilities, LLC; Dallas Estate Management, LLC; LSC 27 LLC; Phoenix Petro Services, LLC; and Proteus Energy LLC. The motion and memorandum identify "Cox Investment Partners" as a limited liability company but the caption, the docket, and Brad Cox's declaration identify it as "Cox Investment Partners, LP," and the Court uses the latter. ECF No. 12 ¶ 38; ECF No. 30-2 ¶ 8.

Management LLC – Series No. 7 (Pelican).[41] All eight moved to dismiss for lack of personal jurisdiction, to transfer venue, and to dismiss for failure to state a claim.

**Craig Sanders**, individually and as co-trustee of the Charlee Lochridge Cox Dynasty Trust, filed the same three motions.[42] **Joseph Winkler** filed a combined motion to dismiss under Rules 12(b)(1) and 12(b)(6), and separately moved to transfer venue.[43]

Eleven motions are therefore pending. The Court now resolves one in part, and three others in full: first, the Rule 12(b)(1) portion of Winkler's combined motion, and second, the three Rule 12(b)(2) motions filed by the Nonresident Cox Defendants, the Graham Defendants, and Sanders. The Court will address the remaining motions to transfer venue and, if necessary, the motions to dismiss for failure to state a claim, in separate orders.[44]

---

[41] ECF No. 36 at 1; *see also* ECF No. 88 at 1.

[42] ECF Nos. 84, 85, 86. Sanders originally filed his Rule 12(b)(2) motion at ECF No. 70 and his memorandum in support at ECF No. 77. The Clerk marked both deficient, and Sanders refiled them at ECF Nos. 85 and 85-1. Pages of the refiled documents bear the stamps of both filings.

[43] ECF Nos. 75, 76.

[44] The Graham Defendants ask the Court to decide their motion to transfer venue under 28 U.S.C. § 1404(a) before reaching personal jurisdiction, reasoning in part that doing so would allow the Court to avoid "a novel constitutional issue" by rendering the personal jurisdiction motion moot. ECF No. 60 at 7–10. Although "[t]he question of personal jurisdiction . . . is typically decided in advance of venue," district courts may "reverse the normal order" where "there is a sound prudential justification for doing so[.]" *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). The Court declines to do so here. As discussed below, the Graham Defendants' personal jurisdiction arguments do not pose a novel constitutional issue. And resolving the jurisdictional disputes now aids in addressing the threshold question under the § 1404(a) analysis: whether the transferee court "would have had subject matter jurisdiction, the defendants would have been subject to personal jurisdiction, and venue would have been proper." *Shull v. United Barge Lines*, No. 09-5515, 2010 WL 745006, at *5 n.5 (E.D. La. Feb. 26, 2010) (Barbier, J.) (citing *Hoffman v. Blaski*, 363 U.S. 335 (1960)).

## II. ANALYSIS

### A. Legal Standards.

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (citation omitted). "Rule 12(b)(1) motions challenge the subject matter jurisdiction of the district court[.]" *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023) (citation omitted). A claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" it. *In re FEMA Trailer*, 668 F.3d at 286 (citation and quotation omitted). The plaintiff "bears the burden of proof in establishing that jurisdiction does in fact exist." *Porretto v. City of Galveston Park Bd. of Trs.*, 113 F.4th 469, 481 (5th Cir. 2024) (citation omitted). In examining its jurisdiction, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (citation omitted).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). The Court must satisfy itself of its jurisdiction whether or not a party raises the question. *See* FED. R. CIV. P. 12(h)(3).

Personal jurisdiction is "an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (citation modified). Because the Court decides these motions without holding an evidentiary hearing, it "must accept as true the uncontroverted allegations in the [complaint] and resolve in favor of [the plaintiff] any factual conflicts posed by the affidavits." *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 369 (5th Cir. 2024) (citation omitted). The plaintiff has "the burden to make a *prima facie* showing that personal jurisdiction is proper." *Id.* (citation omitted). But that "prima-facie-case requirement does not require the [C]ourt to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (citation omitted).

### B. The Court Has Subject-Matter Jurisdiction Under 28 U.S.C. § 1334(b).

Section 1334(b) provides that, "[e]xcept as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

The Court first explains why this proceeding falls within that grant, then addresses two arguments that it does not. Winkler contends that § 1334(e)(1) places the Trustee's claims within the exclusive jurisdiction of the bankruptcy court in Texas. Five of the Nonresident Cox Defendants contend that Counts One through Five fall outside § 1334 altogether. Although only Winkler moves under Rule 12(b)(1),

the answer does not belong to him alone. If the Court lacked subject-matter jurisdiction, it could not adjudicate the claims of any party. The Court therefore resolves the question for the proceeding as a whole.

**1. This Adversary Proceeding Arises Under Title 11 and Is, at a Minimum, Related to a Case Under Title 11.**

In *Matter of Wood*, the Fifth Circuit considered whether a suit among the directors and stockholders of a medical clinic, one of whom had filed a Chapter 11 petition, fell within § 1334(b). 825 F.2d 90, 91–92 (5th Cir. 1987). The district court dismissed for lack of subject-matter jurisdiction, and the Fifth Circuit reversed. *Id.* In doing so, the court supplied the definitions that govern here.

A proceeding "arises under" title 11 when it "involve[s] a cause of action created or determined by a statutory provision of title 11." *Id.* at 96. A proceeding is "related to" a case under title 11 when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 93 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). And the categories need not be sorted one against another, because they "operate conjunctively to define the scope of jurisdiction," so that "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *Id.*

This proceeding satisfies the first definition and comfortably satisfies the second. The Trustee brings it on behalf of seven Chapter 7 estates against those he says drained the debtors of the assets that would otherwise have paid their creditors.[45]

[45] ECF No. 12 ¶¶ 1, 16, 19–26, 60.

Seventeen of the counts arise under title 11. Of those seventeen, sixteen counts seek avoidance of fraudulent transfers under 11 U.S.C. § 548 and Count Forty-Seven seeks avoidance of preferential transfers under 11 U.S.C. § 547.[46] Those causes of action exist under title 11. Congress also listed them among the matters a bankruptcy judge may hear and determine. *See* 28 U.S.C. § 157(b)(2)(H) (core proceedings include "proceedings to determine, avoid, or recover fraudulent conveyances").

The remaining counts are at least related to the bankruptcy. Counts Six and Seven ask the Court to declare that identified property, a chalet in Vail and an estate in Dallas, belongs to the debtors' estates. Counts One through Five seek money judgments for injuries to Cox Operating and a declaration that the defendants are liable for the debtors' debts. Eighteen counts seek avoidance of the same transfers under the Texas Uniform Fraudulent Transfer Act, one under the Colorado Uniform Fraudulent Transfer Act, and one under the Louisiana revocatory action. Two more seek recovery of improper equity distributions under Louisiana and Texas corporate statutes, and one seeks a declaration that the transfers are nullities.[47] Recovery on any of them would enlarge the fund available to creditors, and a proceeding whose

---

[46] *Id.* at 68–115 (Counts Nine, Eleven, Thirteen, Fifteen, Seventeen, Nineteen, Twenty-One, Twenty-Three, Twenty-Five, Twenty-Seven, Thirty, Thirty-Two, Thirty-Four, Thirty-Six, Thirty-Eight, and Forty); *id.* at 126 (Count Forty-Seven).

[47] Counts Eight, Ten, Twelve, Fourteen, Sixteen, Eighteen, Twenty, Twenty-Two, Twenty-Four, Twenty-Six, Twenty-Nine, Thirty-One, Thirty-Three, Thirty-Five, Thirty-Seven, Thirty-Nine, Forty-Two, and Forty-Four arise under the Texas Uniform Fraudulent Transfer Act, TEX. BUS. & COMM. CODE § 24.001, *et seq. Id.* at 64–123. Count Twenty-Eight arises under the Colorado Uniform Fraudulent Transfer Act, COLO. REV. STAT. § 38-8-101, *et seq. Id.* at 95–97. Count Forty-Five arises under the Louisiana Revocatory Action, LA. CIV. CODE art. 2036 *et seq. Id.* at 123–25. Counts Forty-One and Forty-Three seek recovery of improper equity distributions under LA. REV. STAT. ANN. 12:1324, *et seq.*, and TEX. BUS. ORGS. CODE § 101.206. *Id.* at 115–17, 119–20. Count Forty-Six seeks a declaration that the transfers are nullities under LA. CIV. CODE art. 2029, *et seq. Id.* at 125–26.

outcome would enlarge or diminish that fund could conceivably affect the estate being administered. Because the § 1334(b) categories operate conjunctively, the Court need go no further.[48]

Five of the Nonresident Cox Defendants argue that the claims against them appear only in Counts One through Five, that those counts state claims under state law, and that they therefore neither arise under nor relate to the bankruptcy.[49] The premise of the pleading is accurate, but the conclusion mistakes the test. *Wood* itself involved state-law claims among the officers of a closely held corporation, and the Fifth Circuit found jurisdiction. 825 F.2d at 93–94. Congress made the same point directly: "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). If state-law character will not by itself make a proceeding non-core, it cannot place the proceeding outside § 1334 altogether. *Wood* kept the two questions separate, taking up jurisdiction first and the "placement of that jurisdiction" second. 825 F.2d at 94–95. The consequence of non-core status is the allocation of adjudicative authority under § 157(c)(1), under which a district judge enters the final judgment.

---

[48] *Accord Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815, 829–32 (W.D. Tex. 2017) (following withdrawal of the reference, a district court sorted a Chapter 11 trustee's adversary proceeding into counts arising under title 11, brought under 11 U.S.C. §§ 544, 548, and 550, and counts related to the bankruptcy case, and exercised jurisdiction over both). Because the debtors' cases were converted to Chapter 7 and no plan was confirmed, the more exacting post-confirmation standard that *Brickley* applied to the related claims has no application here. *See id.* at 829.

[49] ECF No. 59 at 8–10. The five are DeVito, Cox Oil and Gas, LLC, Dallas Estate Management, LLC, Cox Management Dallas, LLC, and CW Facilities, LLC. The argument appears for the first time in their reply memorandum.

The Court concludes that it has subject-matter jurisdiction under § 1334(b). It expresses no view on which counts are core, and which are non-core, a question no party has asked it to decide.

**2. Section 1334(e)(1) Does Not Place the Trustee's Claims Within Another Court's Exclusive Jurisdiction.**

Winkler argues that "[t]he only court that has jurisdiction of the Trustee's causes of action is the United States Bankruptcy Court for the Southern District of Texas, Houston Division, because that Court has exclusive jurisdiction of all the Debtor's property which includes the claims asserted in this Civil Action."[50] His reasoning proceeds in three steps: (1) a debtor's causes of action are property of the estate under 11 U.S.C. § 541; (2) 28 U.S.C. § 1334(e)(1) gives the court where the bankruptcy case is pending exclusive jurisdiction over property of the estate; and (3) no other court may therefore adjudicate these claims.[51] The first step is undisputed, and the second paraphrases the statute. The third does not follow.

Section 1334(e) confers exclusive jurisdiction on "[t]he district court in which a case under title 11 is commenced or is pending" in two categories:

> (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and
>
> (2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327.

---

[50] ECF No. 75-1 ¶ 1.

[51] Winkler locates the exclusive jurisdiction in the bankruptcy court. *Id.* ¶ 4. Section 1334(e) names the district court. The bankruptcy judges of the Southern District of Texas "constitute a unit of the district court," 28 U.S.C. § 151, and hear the debtors' cases on referral from that court under 28 U.S.C. § 157(a). Section 157(b), which Winkler also cites, lists what a bankruptcy judge may hear and determine once a district court has referred a matter. It presupposes the jurisdiction it allocates.

28 U.S.C. § 1334(e).[52] Although § 1334(e)(1) confers exclusive jurisdiction over property, § 1334(b) confers jurisdiction over "all civil proceedings," and that jurisdiction is "original but not exclusive." The two provisions operate on different objects, and Winkler's argument moves from one to the other without accounting for the difference.

The Fourth Circuit addressed that move directly. In *Valley Historic Ltd. Partnership v. Bank of New York*, a Chapter 11 debtor brought a post-confirmation adversary proceeding for breach of contract and tortious interference, and, after failing to establish jurisdiction under § 1334(b), argued that § 1334(e) supplied it because the claims were property of the estate. 486 F.3d 831, 837 (4th Cir. 2007). The court rejected the argument, explaining that the debtor was "viewing two conceptually distinct jurisdictional grants as if they are the same . . . ." *Id.* Section 1334(b) "invests district courts with original but not exclusive jurisdiction over 'civil proceedings.' In contrast, § 1334(e) is a broad grant of exclusive jurisdiction over a debtor's property; it does not invest district courts with jurisdiction to conduct civil proceedings." *Id.* Even had the claims remained property of the estate, "the Debtor would still have had to establish jurisdiction under § 1334(b), since § 1334(e) does not by itself create jurisdiction to conduct civil proceedings." *Id.* at 838; *accord In re Ostroff*, 433 B.R. 442, 453 (Bankr. D.D.C. 2010) ("Jurisdiction over the **property** of

[52] Winkler's memorandum quotes the provision but renders paragraph (1) as "(i)," omits paragraph (2) altogether, and transcribes "property of the estate" as "property of fee estate." ECF No. 75-1 ¶ 5. The Court quotes the statute as enacted.

the debtor under § 1334(e) does not equate to jurisdiction under § 1334(b) over a **proceeding** that relates to such property." (citation omitted)).

That reading accords with the Fifth Circuit's. *Porretto* described § 1334(e)(1) as granting "limited, exclusive *in rem* jurisdiction," whose function is to "divest[] any other court of the authority to take jurisdiction over the res being administered by the trustee for the benefit of unsecured creditors[.]" 113 F.4th at 483–84 (quoting *Ostroff*, 433 B.R. at 452). Section 1334(b), not subsection (e)(1), is the provision that "provides federal jurisdiction over civil proceedings that may affect the rights of a debtor or the administration of the bankruptcy estate." *Id.* at 486 (citing *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007)).

Courts in this circuit have applied this distinction to the argument Winkler makes. In *Landry v. Exxon Pipeline Co.*, landowners sued a debtor's liability insurers under Louisiana's direct action statute, and the defendants argued that because the policies were property of the estate, the suit had to be adjudicated where the bankruptcy was pending. 260 B.R. 769, 774, 781 (Bankr. M.D. La. 2001). The court acknowledged that "at first blush it might appear that if an action involves property of the estate, a federal forum, and more specifically, the district court handling the bankruptcy case involving the estate to which such property belongs, is the only proper forum for adjudication of claims to such property[.]" *Id.* at 781. It held otherwise, because § 1334(e) "more properly denotes a grant by Congress of *in rem* jurisdiction over property," and "must be harmonized with the provisions of § 1334(b)

granting non-exclusive jurisdiction over matters 'arising under,' 'arising in,' and 'related to' bankruptcy and/or bankruptcies." *Id.*

This district applied that reasoning to claims that were themselves property of bankruptcy estates. *Patterson v. Morris*, 337 B.R. 82 (E.D. La. 2006). In *Patterson*, Borrowers who had filed for bankruptcy sued a law firm and its lender clients on state-law claims that had accrued before their petitions, and the defendants argued that the claims "are property of their individual bankrupt estates, and thus any action to recover proceeds paid involves an adjudication of rights in and to property in a bankruptcy estate that must be adjudicated in bankruptcy court." *Id.* at 95. The court rejected the argument, reasoning that the suit was "not an *in rem* action by plaintiffs to recover property of the estate," but "an *in personam* action to establish liability and a right to be paid for the damages allegedly suffered." *Id.* Relying on *Landry*, the court explained that "the imposition of liability is separate and distinct from the satisfaction of that liability," so "the exclusivity of federal jurisdiction over property of the estate does not extend to resolution of a claim which might, or will, have as its *telos* the distribution of property of the estate." *Id.* (quoting *Landry*, 260 B.R. at 783). Rather, that "exclusivity extends only so far as the actual distribution, management, and control of that property is concerned." *Id.* (quoting *Landry*, 260 B.R. at 783).

In sum, the Court's jurisdiction over this proceeding rests on § 1334(b).[53] Winkler cites no authority for the contrary inference his argument actually

[53] The Cox Defendants separately contend in their motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) that the Court lacks subject-matter jurisdiction over Count Six, which seeks a declaration

requires.[54] The Court has found none. The Court denies the Rule 12(b)(1) portion of Winkler's motion.[55]

### C. The Court Has Personal Jurisdiction Over Movants Because Each Has Sufficient Minimum Contacts with the United States.

The Court now turns to the motions under Federal Rule of Civil Procedure 12(b)(2) brought by the Nonresident Cox Defendants, Graham Defendants, and Sanders (collectively, the "Movants"). Movants argue that they lack the continuous and systematic contacts that general jurisdiction requires and the suit-related contacts that specific jurisdiction requires, measuring both against Louisiana and invoking Louisiana's long-arm statute and the Due Process Clause of the Fourteenth Amendment.[56] As explained below, that is not the governing inquiry.

---

that the estate of Cox Operating owns real property in Colorado, because an action to determine title to land may be brought only in the state where the land lies. ECF No. 34-1 at 30–31. They assert the same is true with respect to Count Seven. *Id.* at 31 n.10. The Cox Defendants rely on the local action doctrine, which the Fifth Circuit treats as a limit on subject-matter jurisdiction rather than on venue, and which the parties therefore cannot waive. *See Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 290–91 (5th Cir. 1987). That doctrine is distinct from § 1334, and the Court's holding that § 1334(b) supplies jurisdiction over this proceeding does not resolve it. The argument is raised in a motion this Order does not reach, and the Court will, if necessary, address it alongside the other Rule 12(b)(6) motions.

[54] The Trustee makes the same observation. ECF No. 93 at 7 ("Winkler does not cite a single case depriving a district court of subject matter jurisdiction over non-core claims . . . like those asserted in this Adversary Proceeding.").

[55] Winkler adds a single sentence: "If this Court has jurisdiction, this Court should abstain." ECF No. 75-1 ¶ 6. He identifies no statutory provision, addresses no element of any abstention doctrine, and cites no authority. The Trustee does not respond. *See generally* ECF No. 93. A request in this form does not present the question for decision, and the Court does not consider it.

[56] ECF No. 30-1 at 6–17; ECF No. 36-1 at 3–8; ECF No. 85-1 at 6–12. Sanders's memorandum states that he "incorporates for all such purposes the arguments and authorities of his co defendants." ECF No. 85-1 at 1. On closer review, Sanders's memorandum reproduces the Nonresident Cox Defendants' memorandum with his name added throughout. *Compare, e.g.*, ECF No. 30-1 at 4 ("The Trustee does not allege that any of the Nonresident Cox Entity Defendants have a connection to Louisiana."), *with* ECF No. 85-1 at 4 ("The Trustee does not allege that any of the Nonresident Cox Entity Defendants, including Craig Sanders, have a connection to Louisiana."). The argument section carries the same graft. For example, its heading addresses general jurisdiction over "the Nonresident Cox Defendants," and it reasons that "the Trustee cannot establish a *prima facie* case for general jurisdiction over Defendant Craig Sanders because he has not sufficiently alleged that any of the Nonresident Cox Defendants 'reached out beyond [Texas]'" to Louisiana. ECF No. 85-1 at 8 (citation omitted). The Trustee argues that a memorandum drafted this way never raised the personal

### 1. Bankruptcy Rule 7004 Authorizes Nationwide Service of Process in This Proceeding, and the Movants' Contacts with the United States Therefore Govern.

Federal Rule of Civil Procedure 81(a)(2) provides that the Civil Rules "apply to bankruptcy proceedings to the extent provided by the Federal Rules of Bankruptcy Procedure." The Bankruptcy Rules, in turn, govern "the procedure in cases under the Bankruptcy Code, Title 11 of the United States Code." FED. R. BANKR. P. 1001(a). Congress authorized those rules for "the practice and procedure in cases under title 11." 28 U.S.C. § 2075. Each of these provisions is keyed to the kind of case, not to the identity of the court.[57]

Bankruptcy Rule 7004(d) provides that "[a] summons and complaint (and all other process, except a subpoena) may be served anywhere within the United States." Rule 7004(f) then specifies methods of establishing personal jurisdiction, drafted in terms of the nature of the proceeding:

> **Establishing Personal Jurisdiction.** If exercising jurisdiction is consistent with the United States Constitution and laws, serving a summons or filing a waiver of service under this Rule 7004 or the applicable provisions of FED. R. CIV. P. 4 establishes personal jurisdiction over a defendant:
>
> (1) in a bankruptcy case; or
>
> (2) in a civil proceeding arising under the Code, or arising in or related to a case under the Code.

---

jurisdiction defense on Sanders's behalf, and that he has waived it. ECF No. 90 at 4–7. The Court does not reach that argument because, as explained below, the motion fails on its merits.

[57] *See* FED. R. BANKR. P. 9001(b)(4) advisory committee's note to 1987 amendment ("The rule is also amended to include a definition of 'court or judge.' Since a case or proceeding may be before a bankruptcy judge or a judge of the district court, 'court or judge' is defined to mean the judicial officer before whom the case or proceeding is pending.").

FED. R. BANKR. P. 7004(f). Put plainly, in a civil proceeding arising under title 11, or arising in or related to a case under title 11, Bankruptcy Rule 7004(d) authorizes service of process anywhere within the United States, and Rule 7004(f) makes such service effective to establish personal jurisdiction over the defendant served so long as "exercising jurisdiction is consistent with the United States Constitution and laws[.]" The Court has already determined this adversary proceeding is, at a minimum, related to a case under title 11, and no Movant disputes that it was served in compliance with Bankruptcy Rule 7004(d). The only question is what it means for the Court's exercise of personal jurisdiction over Movants to be "consistent with the United States Constitution and laws[.]" FED. R. BANKR. P. 7004(f).

That question is not open in this circuit. In *Double Eagle Energy Services, L.L.C. v. MarkWest Utica EMG, L.L.C.*, a Chapter 11 debtor sued two non-debtors on a contract claim in the United States District Court for the Western District of Louisiana. 936 F.3d 260, 262–63 (5th Cir. 2019). The debtor later assigned the claim to a creditor, and the defendants moved to dismiss, arguing that the assignment destroyed § 1334(b) jurisdiction and that the district court therefore lacked personal jurisdiction over them. *Id.* at 263. A magistrate judge agreed on both points, and the district court adopted the recommendation and dismissed. *Id.*

The Fifth Circuit vacated. *Id.* at 265. After concluding that the time-of-filing rule preserved the § 1334(b) jurisdiction that existed when the suit was filed, the court turned to personal jurisdiction:

> Unlike Rule 4, Bankruptcy Rule 7004 permits nationwide service of process without limitation to the reach of the forum state's courts. There

> remains the requirement of a constitutionally sufficient relationship with the forum. With nationwide service, the forum is the United States. So minimum contacts with the United States (Fifth Amendment due process) suffice; minimum contacts with a particular state (Fourteenth Amendment due process) are beside the point.

*Id.* at 264 (internal quotations and citations omitted). Because the defendants were "residents of the United States," they had "enough contact with the United States that haling them into federal court 'does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994)); *see also Lentz v. Trinchard*, 730 F. Supp. 2d 567, 577–78 (E.D. La. 2010) (applying *Busch* to a Chapter 7 trustee's related proceeding).

The Nonresident Cox Defendants and the Graham Defendants respond that even under the Fifth Amendment a court must separately assess whether the plaintiff's chosen forum is fair and reasonable, relying on decisions of the Tenth and Eleventh Circuits.[58] Those decisions do not bind this Court, and the governing test is the one stated in *Double Eagle*. In any event, each cited decision places the burden on the defendant to show a constitutionally significant inconvenience and describes such cases as rare. *Peay*, 205 F.3d at 1212–13; *Managed Care*, 939 F.3d at 1158; *Republic of Panama*, 119 F.3d at 946–48. *Republic of Panama* adds that "[w]here . . . Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives." 119

---

[58] ECF No. 59 at 6 (citing *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000), and *Managed Care Advisory Crp., LLP v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1158 (11th Cir. 2019)); ECF No. 60 at 4–6 (citing *Peay*, 205 F.3d at 1211, and *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997)).

F.3d at 948. The defendants also invoke *Fuld v. Palestine Liberation Organization*, where the Supreme Court observed that "the Fifth Amendment might entail a similar 'inquiry into the reasonableness of the assertion of jurisdiction in the particular case.'" 606 U.S. 1, 23 (2025) (citation omitted).[59] But *Fuld*'s observation is best characterized as dicta, as the Court did "not determine whether such analysis is constitutionally required" and expressly "decline[d] to import the Fourteenth Amendment minimum contacts standard into the Fifth Amendment" because the latter "necessarily permits a more flexible jurisdictional inquiry . . . ." *Id.* at 16, 23.

The Nonresident Cox Defendants raise two further objections to applying Rule 7004 here, but neither succeeds. First, they contend that the Operative Complaint's use of collective allegations cannot support access to the Rule.[60] That objection would have force under a state-specific contacts framework, because personal jurisdiction is assessed defendant by defendant. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("The requirements of *International Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction."). Under the Fifth Amendment inquiry the Rule makes applicable, the only individualized fact required of a defendant is its presence in the United States. *Double Eagle*, 936 F.3d at 264. Second, they contend that reading the Rule to permit a suit outside the district where the bankruptcy is pending defeats the centralizing purpose of Bankruptcy Rule 1001(a).[61] But a rule's

---

[59] ECF No. 59 at 6; ECF No. 60 at 6.
[60] ECF No. 59 at 9–10.
[61] ECF No. 59 at 1–4; ECF No. 60 at 2–3.

purpose does not narrow its plain text, nor can it displace controlling and contrary precedent.

Accordingly, contacts with the United States under the Fifth Amendment govern, and contacts with the particular state in which the court sits do not. Any Movant who resides in the United States has sufficient minimum contacts that requiring them to answer in a federal court does not offend traditional notions of fair play and substantial justice. *Id.* As detailed below, each Movant's own submissions place it within the United States, whether by declaration, affidavit, or representation to the Court.

### 2. Each Movant's Own Submissions Establish Its Presence in the United States.

Brad Cox declares that he is "a resident and citizen of the State of Texas, where I am registered to vote."[62] DeVito declares that he is "a resident and citizen of the Commonwealth of Virginia, where I am registered to vote."[63] And both declare that Cox Oil and Gas, LLC and Dallas Estate Management, LLC are Texas limited liability companies; that LSC 27, LLC, Cox Management Dallas, LLC, CW Facilities, LLC, Phoenix Petro Services LLC, and Proteus Energy LLC are Delaware limited liability companies; that Cox Investment Partners, LP is a Delaware limited partnership; and that each of those entities "has a principal place of business in Dallas, Texas."[64] That accounts for all ten Nonresident Cox Defendants.

---

[62] ECF No. 30-2 ¶ 3.
[63] ECF No. 30-3 ¶ 3.
[64] ECF No. 30-2 ¶¶ 7–8; ECF No. 30-3 ¶¶ 7–8.

William Graham attests in each of his three trustee capacities that he "is a resident of Dallas, Texas," and that each of the three trusts was "created and administered in the State of Texas" with an "administrative situs" at a Dallas address.[65] He avers that EasTex Deer Meadow, LLC is a Texas limited liability company with a Dallas principal office that owns real property near Athens, Texas, and that Windward Capital Assets, LLC is a Delaware limited liability company with the same Dallas principal office.[66] The Graham Defendants filed no declaration for the two RCL entities. But they represent on behalf of all eight movants that they are "Texas-based" and that "[w]ithout question, the Southern District of Texas would have jurisdiction over the Graham Defendants."[67] Neither RCL entity contends that it lacks contacts with the United States. Indeed, no Movant makes that contention, and the Court has no occasion to find otherwise as to any of them.

Sanders filed no declaration. However, his memorandum states that he "is a resident and citizen of Texas and conducts business in Dallas, Texas."[68] Graham's declaration separately identifies Sanders as "a resident of the State of Texas."[69] That is the only individualized fact the governing standard requires.

---

[65] ECF No. 36-2 ¶¶ 3–5; ECF No. 36-3 ¶¶ 3–5; ECF No. 36-6 ¶¶ 3–4, 7.

[66] ECF No. 36-5 ¶¶ 4–5, 8–10; ECF No. 36-4 ¶¶ 4, 7–9.

[67] ECF No. 60 at 10. The Nonresident Cox Defendants make the same concession. ECF No. 59 at 1 n.2 ("The Cox Defendants do not dispute that the Southern District of Texas may exercise personal jurisdiction over them.").

[68] ECF No. 85-1 at 2.

[69] ECF No. 36-6 ¶ 6. The same declaration states that DeVito succeeded Sanders as co-trustee of the Dynasty Trust. *Id.* ¶¶ 5-6. The caption continues to name Sanders in that capacity, and Sanders moves in that capacity. ECF No. 85 at 2. The Court takes the motion as filed and expresses no view on who presently serves as co-trustee.

Because each Movant was served with process in compliance with Bankruptcy Rule 7004 in a civil proceeding related to a case under title 11, and because each is present in the United States, the Court has personal jurisdiction over each of them.

## III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Joseph Winkler's Motion[70] to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6) is **DENIED IN PART**, insofar as it seeks dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction. The Court does not reach the portion of the motion seeking dismissal under Rule 12(b)(6), which remains pending.

**IT IS FURTHER ORDERED** that the Motion[71] to Dismiss the Complaint for Lack of Personal Jurisdiction Pursuant to FED. R. CIV. P. 12(b)(2) filed by Brad E. Cox; Vincent DeVito; LSC 27, LLC; Dallas Estate Management, LLC; CW Facilities, LLC; Cox Management Dallas, LLC; Cox Investment Partners, LP; Cox Oil and Gas, LLC; Phoenix Petro Services, LLC; and Proteus Energy, LLC is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion[72] to Dismiss the Complaint for Lack of Personal Jurisdiction Pursuant to FED. R. CIV. P. 12(b)(2) filed by William Graham, in his capacities as named trustee of the Bradley Edwin Cox Trust, named co-trustee of the Charlee Lochridge Cox Dynasty Trust, and named trustee of the Edwin L. Cox "B" Trust; EasTex Deer Meadow, LLC; WIN Management, LLC;

---

[70] ECF No. 75.
[71] ECF No. 30.
[72] ECF No. 36.

Windward Capital Assets, LLC; RCL Capital Management LLC – Series No. 10 (Southern Bay); and RCL Capital Management LLC – Series No. 7 (Pelican) is **DENIED**.

**IT IS FURTHER ORDERED** that Craig Sanders's Motion[73] to Dismiss the Complaint for Lack of Personal Jurisdiction Pursuant to FED. R. CIV. P. 12(b)(2), filed individually and in his capacity as co-trustee of the Charlee Lochridge Cox Dynasty Trust, is **DENIED**.

New Orleans, Louisiana, this 21st day of August, 2026.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

[73] ECF No. 85.