**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MICHAEL D. WARNER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-943** |
| **BRAD E. COX, ET AL.** | **SECTION "O"** |

**ORDER AND REASONS**

Before the Court in this civil action and adversary proceeding are four motions to transfer venue.[1] The Chapter 7 trustee of seven jointly administered debtor estates filed this proceeding in this Court, where the business he says the defendants looted was organized and run. The consolidated bankruptcy case is pending in the Southern District of Texas. Twenty-five of the twenty-six named defendants ask the Court to send the proceeding there, invoking 28 U.S.C. § 1404(a), 28 U.S.C. § 1412, or both.

The Fifth Circuit has not decided which of those statutes governs the transfer of a proceeding related to a bankruptcy case, and district courts within the circuit have reached contrary results. The Court need not take a side, because the movants have not carried their burden under either. The Southern District of Texas is a district in which this proceeding might have been brought, but that establishes only that transfer is permissible. It does not establish that transfer is warranted.

Accordingly, for these reasons and those that follow, the Court **DENIES** all four motions.

[1] ECF Nos. 31, 32, 76, 86.

## I. BACKGROUND

The Court recounted the facts of this proceeding in its order and reasons denying three motions to dismiss for lack of personal jurisdiction and denying in part a combined motion raising lack of subject-matter jurisdiction, which reserved the portion of that motion brought under Rule 12(b)(6).[2] The Court will not restate all of those facts here.

In short, Cox Operating L.L.C., a Louisiana limited liability company, operated oil and gas wells and related structures owned by six affiliated entities.[3] Those assets lay principally in Louisiana state waters and on the Outer Continental Shelf adjacent to Louisiana.[4] In May 2023, four trade creditors filed an involuntary Chapter 7 petition against Cox Operating in the bankruptcy court for this district, and two days later Cox Operating and six affiliates filed voluntary Chapter 11 petitions in the bankruptcy court for the Southern District of Texas.[5] The Louisiana bankruptcy court then transferred the involuntary case to Texas, finding venue proper in both districts but concluding that the interest of justice favored transfer. *See In re Cox Operating, LLC*, 652 B.R. 49, 54–55, 59 (Bankr. E.D. La. 2023). The debtors sold substantially all of their producing assets, the cases converted to Chapter 7 in February 2024, and Michael D. Warner qualified as Chapter 7 trustee in May 2024.[6] The Trustee filed this adversary proceeding in May 2025, pleading forty-seven counts against twenty-

[2] *See* ECF No. 113 at 2–10.
[3] ECF No. 12 ¶¶ 19–26, 71; ECF No. 61-1 ¶ 14.
[4] ECF No. 12 ¶ 71; ECF No. 61-1 ¶ 13.
[5] ECF No. 12 ¶¶ 63–64; ECF No. 61-1 ¶¶ 3–5.
[6] ECF No. 12 ¶¶ 16, 67–70; ECF No. 61-1 ¶¶ 6, 7, 15.

six named defendants and fifteen John Doe defendants, and alleging that the officers who ran the business drained it for their own benefit and for the benefit of affiliated entities and family trusts.[7]

As material to the motions to transfer, four sets of defendants seek transfer to the Southern District of Texas: the Cox Defendants,[8] the Graham Defendants,[9] Craig Sanders,[10] and Joseph Winkler.[11] Together they comprise twenty-five of the twenty-six named defendants.[12] The Cox Defendants, the Graham Defendants, and Sanders move under 28 U.S.C. § 1404. Winkler moves under 28 U.S.C. § 1412. Through adoptions by reference, three of the four now press both provisions.[13]

The movants submitted three declarations. Brad E. Cox and Vincent DeVito each attest to the entity defendants' principal places of business in Dallas, to the location in Texas of the bank accounts through which any challenged transfer would have passed, and to their understanding that the entity defendants' records are in Texas.[14] William Graham attests that no Graham Defendant is formed, organized, or

---

[7] ECF No. 12 ¶¶ 1–2, 60–61, 129–567.

[8] Brad E. Cox; Vincent DeVito; Cox Interests, LLC; Cox Investment Partners, LP; Cox Gathering LLC; Cox Management Dallas, LLC; Cox Oil and Gas, LLC; Cox Oil, LLC; CW Facilities, LLC; Dallas Estate Management, LLC; Flow Line Transportation, LLC; Half Moon Lake, L.L.C.; Lochridge Energy Services P&A, LLC; LSC 27 LLC; Phoenix Petro Services, LLC; Proteus Energy LLC; and Quarantine Bay LLC. ECF No. 31 at 2–3.

[9] William Graham, in his capacities as named trustee of the Bradley Edwin Cox Trust, named co-trustee of the Charlee Lochridge Cox Dynasty Trust, and named trustee of the Edwin L. Cox "B" Trust; EasTex Deer Meadow, LLC; WIN Management, LLC; Windward Capital Assets, LLC; RCL Capital Management LLC – Series No. 10 (Southern Bay); and RCL Capital Management LLC – Series No. 7 (Pelican). ECF No. 32 at 2–3.

[10] Sanders moves "Individually and as Co-Trustee of the Charlee Lochridge Cox Dynasty Trust, and in any other capacity or position he is joined herein[.]" ECF No. 86 at 2.

[11] ECF No. 76 at 1.

[12] CLS Development, LLC is the only named defendant that has yet to appear and has moved for nothing.

[13] *See infra* Part II.B.

[14] ECF No. 31-5 ¶¶ 7–12; ECF No. 31-6 ¶¶ 7–12.

administered in Louisiana, employs anyone there, or maintains records there, and that any transfer alleged occurred in Texas.[15] The Cox Defendants also attach two declarations that Ryan Omohundro, Cox Operating's Chief Restructuring Officer, filed in the bankruptcy courts in 2023, offered to establish that the debtors were headquartered and administered in Texas.[16] Sanders and Winkler submitted no declaration.[17]

The Trustee submitted eight declarations. His own attests to his residence in Texas, to Cox Operating's former operational headquarters in Orleans Parish and later Jefferson Parish, to the electronic form of the debtors' records and their accessibility to his Louisiana counsel and consultants, and to at least 241 Louisiana creditors owed approximately $150 million.[18] Rodney Dykes, Cox Operating's former President and Chief Operating Officer from 2013 until March 2024, attests to which departments the company's New Orleans, Dallas, and Houston offices housed and to which office directed its day-to-day operations.[19] Cliff Bickerstaff, an executive vice president of Amarillo National Bank—the debtors' secured lender—attests that the bank's records are stored and can be shared electronically, that it does not object to this proceeding going forward in New Orleans, and that it will not resist a subpoena

---

[15] ECF No. 33 ¶¶ 10–13.

[16] ECF No. 31-3 (declaration in support of the venue transfer motion, *In re Cox Operating, L.L.C.*, No. 23-10734 (Bankr. E.D. La.)); ECF No. 31-4 (declaration in support of the Chapter 11 petitions and first-day pleadings, *In re MLCJR LLC*, No. 23-90324 (Bankr. S.D. Tex.)); *see also* ECF No. 31-1 at 4, 5, 9.

[17] Sanders's memorandum cites "Exhibit 4 (Decl. of B. Cox)" and "Exhibit 5 (Decl. of V. DeVito)," ECF No. 86-1 at 10, but those exhibits were filed with the Cox Defendants' motion. ECF Nos. 31-5, 31-6.

[18] ECF No. 61-1 ¶¶ 2, 12, 21, 23.

[19] ECF No. 61-2 ¶¶ 2–9.

issued here.[20] Five Louisiana trade creditors attest to their organization in Louisiana, to the location of their records custodians, and to the sums Cox Operating owes them.[21] The Trustee also attaches an excerpt of a bankruptcy court hearing transcript, a declaration DeVito filed in other litigation in this district, and the complaint from that litigation.[22]

## II. ANALYSIS

### A. Legal Standards.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The party seeking transfer "must show good cause." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*) (en banc) (quoting *Humble Oil & Refining Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963)). To do so, it "must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* (quoting 28 U.S.C. § 1404(a)). That burden "reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *Id.* "Thus, when the transferee venue is not *clearly more convenient*

[20] ECF No. 61-3 ¶¶ 1–2, 4–6.

[21] ECF No. 61-4 ¶¶ 1, 3–6 (Jeff Delahoussaye, Keystone Chemical, LLC); ECF No. 61-5 ¶¶ 1, 3–6 (Vanessa Pierce, Offshore Liftboats, LLC); ECF No. 61-6 ¶¶ 1, 3–6 (Brennan Duthu, Premier Offshore Catering, Inc.); ECF No. 61-7 ¶¶ 1, 3–6 (Deborah Wallace, Specialty Offshore, Inc.); ECF No. 61-8 ¶¶ 1, 3–6 (Robert Boudreaux, Sr., R. & R. Boats, Inc.).

[22] ECF Nos. 61-9, 61-10, 61-11.

than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* (emphasis added).

"[W]hether a § 1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice" turns on four "private" interest factors and four "public" interest factors. *Id.* "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*)). "The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *Id.* (quoting *Volkswagen I*, 371 F.3d at 203).

The factors "are not necessarily exhaustive or exclusive," and "none . . . can be said to be of dispositive weight." *Id.* (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)). District courts may not conduct "a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score[.]'" *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013). Even so, "the standard is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and

justice." *Def. Distrib. v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (citing *Volkswagen II*, 545 F.3d at 314–15). And "[w]here there is no demonstration by the movant, let alone a clear one, the court cannot weigh a factor against the non-movant and in favor of transfer." *Id.* at 434.

Section 1412 provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. It differs from § 1404(a) in three respects. First, § 1412 does not require that the transferee district be one where the action "might have been brought." *Cf.* 28 U.S.C. § 1404(a). Second, § 1412 is disjunctive, so a movant need only establish that transfer is either "in the interest of justice" or "for the convenience of the parties." *Marquette Transp. Co. v. Trinity Marine Prods., Inc.*, No. 06-826, 2006 WL 2349461, at *3 (E.D. La. Aug. 11, 2006); *see also In re Directory Distrib. Assocs., Inc.*, 566 B.R. 869, 878 (Bankr. S.D. Tex. 2017). And third, the movant's burden is a "preponderance of the evidence" rather than a clear demonstration. *Marquette Transp. Co.*, 2006 WL 2349461, at *3 (quoting *In re Commonwealth Oil Ref. Co., Inc.*, 596 F.2d 1239, 1241 (5th Cir. 1979)).

"Regardless of whether transfer is sought pursuant to Section 1412 or Section 1404, the principal considerations are the convenience of the parties and the interests of justice." *Union Oil Co. of California v. Shaffer*, 563 B.R. 191, 204–05 (E.D. La. 2016) (citation omitted). Courts in this circuit assess the interest of justice under § 1412 by reference to six factors:

> (a) Efficiency and economics of estate administration; (b) Presumption in favor of the "home court"; (c) Judicial economy and efficiency; (d)

> Fairness and the ability to receive a fair trial; (e) The state's interest in having local controversies decided within its borders; and (f) Plaintiff's original choice of forum.

*Id.* at 205; *see also In re Directory Distrib. Assocs., Inc.*, 566 B.R. 869, 878 (Bankr. S.D. Tex. 2017) (quoting *Campbell v. Williams*, No. 14-097, 2015 WL 3657627, at *3 (S.D. Tex. June 12, 2015)) (stating a seven-factor formulation that adds the enforceability of any judgment rendered). "The 'interest of justice' component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis." *Marquette Transp. Co.*, 2006 WL 2349461, at *3 (quoting *Zhang v. Rothrock*, No. 05-3461, 2006 WL 213951, at *1 (S.D. Tex. Jan. 25, 2006)). Convenience of the parties is assessed under five factors: "(a) location of the plaintiff and defendant; (b) ease of access to necessary proof; (c) convenience of witnesses; (d) availability of subpoena power for the unwilling witnesses; (e) expense related to obtaining witnesses." *Directory Distrib. Assocs.*, 566 B.R. at 878 (quoting *Campbell*, 2015 WL 3657627, at *3).

The Court's analysis proceeds as follows. The Court first concludes that it may resolve all four motions under both statutes without deciding which governs. It then determines that this proceeding might have been brought in the Southern District of Texas, which satisfies the threshold that § 1404(a) imposes and § 1412 does not. It next finds that the movants have not clearly demonstrated under § 1404(a) that the transferee district is more convenient. It finally concludes that the movants have not shown by a preponderance under § 1412 that transfer would serve either the interest of justice or the convenience of the parties.

### B. The Court Evaluates All Four Motions Under Both 28 U.S.C. § 1404(a) and 28 U.S.C. § 1412.

The Cox Defendants, the Graham Defendants, and Sanders move for transfer under § 1404, and Winkler invokes § 1412.[23] However, the movants' adoption of the others' arguments has blurred those lines. The Graham Defendants adopted the arguments supporting the Cox Defendants' motion when they filed their own, and later adopted the Cox Defendants' reply, which argues that transfer is proper "under either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1412."[24] Winkler's memorandum states that "[s]ince the analysis under 28 U.S.C. §1412 is similar to 28 U.S.C. §1404," he "additionally adopts the arguments of the Graham Defendants" and "the Memorandum of the Cox Defendants."[25] Those adoptions mean that the Cox Defendants, the Graham Defendants, and Winkler each press both provisions. Sanders alone relies on § 1404 throughout.[26]

Which provision governs transfer of a proceeding "related to" a bankruptcy case under 28 U.S.C. § 1334(b) is an open question in this circuit. *See In re Schouten*, 657 B.R. 531, 537 (Bankr. N.D. Tex. 2024) ("[T]he Fifth Circuit has yet to answer which of these venue-transfer provisions apply on a motion to transfer a non-core bankruptcy proceeding."). Courts within the circuit have taken three positions. Some

[23] ECF Nos. 31 at 2 and 31-1 at 2, 8, 13 (Cox Defendants); ECF Nos. 32 at 2 and 33 ¶ 6 (Graham Defendants); ECF No. 86-1 at 2, 3, 7, 8, 10, 12, 14 (Sanders); ECF Nos. 76 at 1 and 76-1 at 3, 6 (Winkler).

[24] ECF No. 32-1 at 1 n.1 ("The Graham Defendants adopt by reference the arguments asserted in support of the Cox Defendants' Motion to Transfer Venue."); ECF No. 97 at 1 ("In the interest of relative brevity, the Graham Defendants adopt the Cox Defendants' Reply in Support of their Motion to Transfer Venue."); ECF No. 94 at 4, 7.

[25] ECF No. 76-1 at 6 ¶ 8.

[26] Sanders filed no reply and adopted no other filing.

conclude that § 1412 reaches only core proceedings and that § 1404(a) governs the rest, reasoning that § 1412 speaks of a "case or proceeding *under title 11*" and says nothing of proceedings merely related to one. *See Longhorn Partners Pipeline, L.P. v. KM Liquids Terminals, L.L.C.*, 408 B.R. 90, 97–98 (Bankr. S.D. Tex. 2009); *CapRock Milling & Crushing, LLC v. Perdue Agribusiness LLC*, No. 24-038, 2024 WL 4582903, at *3 (N.D. Tex. Oct. 25, 2024) ("[T]he plain language of Section 1412 indicates it is not appropriate for noncore, bankruptcy-related cases."). Others read "proceeding" to reach related proceedings, drawing on the neighboring venue statute Congress enacted the same day. *See Campbell*, 2015 WL 3657627, at *2; *Marquette Transp. Co.*, 2006 WL 2349461, at *4. And others apply both. *See Directory Distrib. Assocs.*, 566 B.R. at 877–78; *Schouten*, 657 B.R. at 537–38.

The Court takes the third course and assumes, without deciding, that § 1412 reaches a non-core proceeding related to a bankruptcy case, and it analyzes each motion under that provision as well as under § 1404(a).

### C. This Proceeding Might Have Been Brought in the Southern District of Texas.

Section 1404(a) permits transfer only to a district "where it might have been brought" or "to which all parties have consented." Section 1412 contains no such limitation. Because the Court applies § 1404(a), it addresses the threshold.[27]

[27] The Cox Defendants state that they "do not dispute that the Southern District of Texas may exercise personal jurisdiction over them," ECF No. 59 at 1–2 n.2, and the Graham Defendants state that they "consent to personal jurisdiction in Texas," ECF No. 60 at 10. Consent under § 1404(a) must come from all parties, and the Trustee opposes transfer, so the Court analyzes the threshold under the "might have been brought" clause.

### 1. Venue Would Lie in the Southern District of Texas Under 28 U.S.C. § 1409(a).

Section 1391 governs the venue of civil actions "[e]xcept as otherwise provided by law." 28 U.S.C. § 1391(a)(1). Section 1409 is such a provision. *See, e.g.*, *Longhorn Partners*, 408 B.R. at 98 ("The adversary could have been filed in Delaware pursuant to § 1409."); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, No. 03-4973, 2004 WL 2278770, at *20 (S.D. Tex. Sept. 14, 2004) ("[U]nder subsection 1409(a), these claims could have been pursued in the Southern District of New York and transfer to that district is permissible."); *LSREF2 Baron, LLC v. Aguilar*, No. 12-1242, 2013 WL 230381, at *7 (N.D. Tex. Jan. 18, 2013).[28]

Section 1409(a) provides that, "[e]xcept as otherwise provided in subsections (b) and (d), a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." The jointly administered cases are pending in the Southern District of Texas. Venue for this proceeding would therefore have been proper there when the Trustee filed it, and the answer does not vary from defendant to defendant.[29]

### 2. The Southern District of Texas Would Have Had Personal Jurisdiction Over Every Defendant.

The Court's prior order described the standard as stated in *Double Eagle Energy Servs., L.L.C. v. MarkWest Utica EMG, L.L.C.*, 936 F.3d 260, 264 (5th Cir.

[28] *Directory Distributing* reached the threshold under 28 U.S.C. § 1391(b)(1) without addressing § 1409. 566 B.R. at 884.

[29] Neither exception to § 1409(a) applies. Subsection (b) restricts venue for proceedings to recover money judgments or property below specified thresholds, and the amounts at issue here are far greater. Subsection (d) restricts venue for claims arising after the commencement of the case from the operation of the debtor's business, and every transfer the Trustee challenges is pleaded as occurring between January 1, 2017, and the petition date. *See* ECF No. 12 ¶¶ 79, 240.

2019). Bankruptcy Rule 7004(d) authorizes service of process anywhere in the United States in a proceeding arising under title 11 or arising in or related to a case under title 11, whether that proceeding is pending before a bankruptcy judge or a district judge, and Rule 7004(f) makes such service effective to establish personal jurisdiction. Where service reaches nationwide, the forum is the United States, contacts with the particular state in which the court sits are not the question, and a defendant present in the United States has contacts sufficient that requiring it to answer in a federal court comports with due process.[30] Because the source of jurisdiction is nationwide service, jurisdiction in the transferee district would have existed as of right when the Trustee filed suit.

The inquiry reaches every defendant. The prior order adjudicated personal jurisdiction as to seventeen of the twenty-six defendants.[31] As to the other nine, the record establishes presence in the United States: Winkler is pleaded and asserts himself to be a Texas resident;[32] CLS Development, LLC is pleaded as a Texas limited liability company;[33] Cox Oil, LLC is pleaded as a Delaware limited liability company;[34] and Cox Interests, LLC, Cox Gathering LLC, Flow Line Transportation, LLC, Half Moon Lake, L.L.C., Lochridge Energy Services P&A, LLC, and Quarantine

---

[30] ECF No. 113 at 21–25.

[31] *Id.* at 25–27. The prior order adjudicated personal jurisdiction as to the ten Nonresident Cox Defendants, the eight Graham Defendants, and Sanders. Because William Graham moves in three capacities and Sanders in two, those designations correspond to seventeen defendants.

[32] ECF No. 12 ¶ 30; ECF No. 76-1 ¶ 4.

[33] ECF No. 12 ¶ 36.

[34] *Id.* ¶ 42.

Bay LLC are each Louisiana limited liability companies.[35] No Defendant contends that it lacks contacts with the United States.[36]

Because this proceeding might have been brought in the Southern District of Texas, the § 1404(a) threshold is satisfied.

**D. The Movants Have Not Clearly Demonstrated Under 28 U.S.C. § 1404(a) That the Southern District of Texas Is More Convenient.**

**1. The Private Interest Factors do not Favor Transfer.**

**Access to sources of proof is neutral.** "The first factor focuses on the location of 'documents and physical evidence relating to the [case].'" *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (quoting *Volkswagen II*, 545 F.3d at 316). "The question is *relative* ease of access, not *absolute* ease of access." *Radmax*, 720 F.3d at 288. The movants' showing is that "[t]o the extent the Cox Entity Defendants named in this lawsuit have records, it is my understanding that those records are located in Texas," and that no Graham Defendant maintains records in Louisiana.[37] Winkler claims that any documentary evidence is "presumably" in Texas.[38] That is insufficient. The movant must make "an *actual showing* of the existence of relevant sources of proof, not merely an expression that some sources likely exist in the prospective forum." *Bruck*, 30 F.4th at 434 (emphasis added).

[35] *Id.* ¶¶ 37, 39, 46, 47, 48, 52; ECF No. 31-5 ¶ 9.

[36] CLS Development, LLC has neither appeared nor moved for anything. It was served under Bankruptcy Rule 7004 on September 15, 2025, and its answer came due on October 6, 2025. ECF No. 48. The Trustee pleads that it is a Texas limited liability company registered to do business in Louisiana and that Sanders is its manager, and no party controverts those allegations. ECF No. 12 ¶ 36.

[37] ECF No. 31-5 ¶ 12; ECF No. 31-6 ¶ 12; ECF No. 33 ¶ 13.

[38] ECF No. 76-1 ¶ 4.

The Trustee, meanwhile, has established that the debtors' records are electronic and already accessible to his Louisiana counsel and consultants, that Cox Operating's accounting department sat in New Orleans, and that the bank whose records the movants invoke keeps them electronically and does not object to producing them here.[39] And where "'the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum[,]' this factor bears less strongly on the transfer analysis.'" *TikTok*, 85 F.4th at 358–59 (quoting *In re Planned Parenthood Fed'n Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022)).

**The availability of compulsory process weighs against transfer.** This factor concerns witnesses who will not appear voluntarily, because a subpoena commands trial attendance only within 100 miles of where the witness resides, is employed, or regularly transacts business, or within the witness's home state on conditions not present here. *See Volkswagen II*, 545 F.3d at 315; FED R. CIV. P. 45(c)(1). "[T]he availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *TikTok*, 85 F.4th at 360 (quoting *Planned Parenthood*, 52 F.4th at 630–31).

The record identifies non-party witnesses within this Court's reach and outside the transferee court's. Five Louisiana trade creditors have submitted declarations identifying their business executives and records custodians in Lafayette, Lafourche, Terrebonne, and Tangipahoa Parishes.[40] Beyond them, Dykes resides in Osyka,

[39] ECF No. 61-1 ¶ 12; ECF No. 61-2 ¶ 4; ECF No. 61-3 ¶ 4.

[40] ECF No. 61-4 ¶¶ 1, 4 (Broussard, Lafayette Parish); ECF No. 61-5 ¶¶ 1, 4 (Cut Off, Lafourche Parish); ECF No. 61-6 ¶¶ 1, 4 (Terrebonne Parish); ECF No. 61-7 ¶¶ 1, 4 (Loranger, Tangipahoa Parish); ECF No. 61-8 ¶¶ 1, 4 (Houma and Bourg, Terrebonne Parish).

Mississippi, which is within 100 miles of the Court.[41] He also declares that the New Orleans office housed the company's accounting, operations, human resources, engineering, and geological departments, that the functions of those departments "were performed by employees of Cox Operating," that the superintendents servicing operations across South Louisiana and offshore reported to that office, and that New Orleans was the company's largest office by number of employees.[42] The Trustee declares that the former accounting and operations personnel reside in the New Orleans metropolitan region.[43] Those former employees are non-parties. Neither the Trustee nor any defendant can produce them, and a court in Houston could not compel their attendance at trial. The Trustee has not named them, and the Court weighs the point accordingly, but no movant disputes that Cox Operating employed those departments in New Orleans or suggests that the personnel are located elsewhere.

The Cox Defendants identify one witness—Chief Restructuring Officer Ryan Omohundro—on the other side of the ledger, asserting that he is "located in Texas and more than 100 miles from the courthouse in New Orleans."[44] They cite

[41] ECF No. 61-2 ¶ 11.

[42] *Id.* ¶¶ 4–5, 9. Dykes identifies the executives who operated out of the New Orleans office as himself, the purchasing manager, the health safety and environmental manager, and the accounting and revenue manager. *Id.* ¶ 5.

[43] ECF No. 61-1 ¶ 25. The Trustee states that he and his counsel "have not identified all of the central fact witnesses." *Id.*

[44] ECF No. 31-1 at 12. The Cox Defendants add that other "professional advisors" such as "Alvarez & Marsal North America, LLC, Moelis & Company LLC, and Whitley Penn," "*may* attend hearings, be deposed, testify in court, or be required to produce documents," and that they reside in Texas, citing each firm's office-location webpage. *Id.* at 12–13 nn.13–15 (emphasis added). This factor concerns the attendance of witnesses and, beyond Omohundro, the movants identify no person at any of those firms or what any such person would testify to.

Omohundro's consulting firm's personnel page and, even accepting their claim, they place Omohundro in *Texas* rather than in the transferee district.[45] More to the point, the "gravamen" of this factor is "compulsory process for non-party witnesses," *Bruck*, 30 F.4th at 434, and the Cox Defendants have not "alleged or shown that [Omohundro] would be unwilling to testify." *TikTok*, 85 F.4th at 360 (citation omitted). Rather, their own exhibits show that Omohundro testified in person before the bankruptcy court in this district during the 2023 venue proceedings.[46] The Graham Defendants say only that they are "not currently aware of any anticipated material witness who is located in Louisiana," and describe witnesses they "expect to rely upon" as located "in or around Dallas, Texas" without distinguishing between party and non-party witnesses.[47] Weighed against the witnesses the record places within this Court's reach and outside the transferee court's, one advisor of unstated relevance whose location rests on a website does not make the transferee forum the better one for securing unwilling testimony. *Id.*

**The cost of attendance for willing witnesses is neutral.** Brad Cox, Sanders, and Winkler are Texas residents; Graham resides in Dallas; and the Graham Defendants state that "[s]ubstantially all of the witnesses" they expect to rely upon are "located in or around Dallas, Texas, which is more than 500 miles away from the courthouse in the Eastern District of Louisiana," while "Dallas, Texas, is

[45] *Id.* at 12 & n.12.

[46] ECF No. 31-2 at 3 ("According to the testimony of CRO Omohundro of Houston-based Alvarez & Marsal North America, LLC ("A&M") at the hearing . . . ."); *see also Cox Operating, LLC*, 652 B.R. at 53.

[47] ECF No. 32-1 at 12.

less than 250 miles from the Southern District of Texas Courthouse in Houston."[48] This difference matters because "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05.

Still, it matters less than the movants suggest. Their own submissions place their witnesses in Dallas, which lies in the Northern District of Texas rather than the Southern. 28 U.S.C. § 124(a)(1). By the movants' own measure, transfer to Houston would still require those witnesses to travel roughly 250 miles, and no movant asked to be sent to the district where its witnesses are. DeVito, the one movant who addressed his own circumstances, resides in Virginia and worked from "Great Falls, Virginia and Dallas, Texas."[49] On the other side, Dykes resides in Mississippi and states that appearing in New Orleans "will be substantially less burdensome" to him than appearing in Houston; the five creditor declarants are in Lafayette, Lafourche, Terrebonne, and Tangipahoa Parishes; and the Trustee states that former accounting and operations personnel are in the New Orleans area, though he does not name them.[50] The Trustee's own circumstances are a wash.[51] Transfer would shorten the travel of some witnesses and lengthen the travel of others. This factor favors neither forum.

---

[48] ECF Nos. 12 ¶¶ 27–28, 30; ECF No. 33 ¶ 3; ECF No. 32-1 at 12.

[49] ECF No. 31-6 ¶¶ 3, 6.

[50] ECF No. 61-2 ¶¶ 1, 11; ECF No. 61-4 ¶ 1; ECF No. 61-5 ¶ 1; ECF No. 61-6 ¶ 1; ECF No. 61-7 ¶ 1; ECF No. 61-8 ¶ 1; ECF No. 61-1 ¶ 25.

[51] The Trustee resides in Lipan, Texas, which is closer to Houston than to New Orleans, but states that this district "is a very convenient forum for me, personally," because of property he keeps in Grand Isle. ECF No. 61-1 ¶¶ 2, 24. The movants' assertions about the location of his office are not supported by record evidence and do not agree with each other. *Compare* ECF No. 76-1 at ¶ 4 (Dallas), *with* ECF Nos. 31-1 at 12 & n.11, *and* ECF No. 86-1 at 11 & n.11 (Houston, citing a law firm website).

**The remaining practical problems are neutral.** Only the Graham Defendants address this factor. They argue that the Trustee conceded the propriety of the transferee forum in his Operative Complaint by stating that he "may file" a duplicate proceeding there, and that his counsel's record of filing adversary proceedings in Texas shows a "ready ability to prosecute this action" there without added burden.[52]

Neither point bears upon the practical problems that make trial easy, expeditious, and inexpensive. The footnote the Graham Defendants cite states that this Court "is a court of proper venue," and describes a protective filing the Trustee might make "to ensure he has complied with all deadlines and prescriptive periods and statutes of limitations and repose."[53] Guarding against a limitations defense says nothing about where trial is more efficiently held, and the Court has already determined that venue would lie in the transferee district.[54] As for the second point, the Graham Defendants advise the Court one page earlier that "convenience of counsel is not a factor under 28 U.S.C. § 1404."[55] That is correct. Finally, the Trustee's unrebutted declaration establishes that the adversary proceedings he filed in Texas share no defendant and no claim with this one.[56]

---

[52] ECF No. 32-1 at 13 (citing ECF No. 12 at 1 n.2).

[53] ECF No. 12 at 1 n.2.

[54] *See supra* Part II.C.

[55] ECF No. 32-1 at 12.

[56] ECF No. 61-1 ¶¶ 11, 28, 30. The parties give three different counts of those proceedings. *Compare* ECF Nos. 31-1 at 10, *and* ECF No. 86-1 at 9 (twenty-four), *with* ECF No. 32-1 at 13 (no fewer than twenty-four), *and* ECF No. 61-1 ¶ 11 (forty-four). The Court's conclusion does not depend on the figure.

The Trustee understands the movants to be gesturing at their contention that this Court lacks personal jurisdiction over them.[57] The Court has since resolved that contention.[58] Nothing about the remaining practical problems favors the transferee forum.

### 2. The Public Interest Factors do not Favor Transfer.

**Court congestion does not favor either forum.** The Trustee points to a published statistic that this district had the third-fastest civil trials in the country in 2024, with a median time to trial of 16.4 months.[59] The Fifth Circuit has observed that "contentions relying on such statistics were foreclosed by *Planned Parenthood*'s recognition that, as a general matter, the district court is better placed to evaluate its docket efficiency." *In re Clarke*, 94 F.4th 502, 510 (5th Cir. 2024) (internal quotations omitted) (quoting *TikTok*, 85 F.4th at 363 n.12). No movant offers evidence on this factor. The Court finds it neutral.[60]

**Louisiana's local interest in this dispute weighs against transfer.** The local interest inquiry "is concerned with the interest of *non-party citizens* in adjudicating the case." *Id.* at 511 (citing *Volkswagen I*, 371 F.3d at 206). Cox Operating was a Louisiana limited liability company. Its operational headquarters was in New Orleans and then Jefferson Parish, and its accounting, operations, human resources, engineering, and geological departments were in New Orleans. It

[57] ECF No. 61 at 22.
[58] ECF No. 113.
[59] ECF No. 61 at 22.
[60] The Cox Defendants filed supplemental authority from the Fifth Circuit on this factor. ECF No. 112. The opinion has since been withdrawn and replaced by a substituted opinion that is not designated for publication and so is not precedent. *See In re Google, L.L.C.*, No. 25-40788, 2026 WL 1906872 (5th Cir. Apr. 7, 2026); 5TH CIR. R. 47.5.4.

maintained offices at Grand Isle, Patterson, Intercoastal City, Sabine, Eloi Bay, and Quarantine Bay. The assets it operated lay principally in Louisiana waters and on the Outer Continental Shelf adjacent to Louisiana. And at least 241 Louisiana creditors are owed approximately $150 million, making Louisiana vendors the largest group of unsecured creditors.[61]

The movants answer that the conduct occurred in Texas. Brad Cox and DeVito each declare that "[t]o the extent that Cox Operating LLC or MLCJR LLC made any transfers to one of the defendants named" in the Operative Complaint, "each such transfer would have been directed, made, or authorized in Texas by Cox Operating from its principal place of business in Texas," and that "[a]ny such transfer would then have been received by the defendant transferee in Texas."[62] Graham declares that any transfer alleged "occurred in the State of Texas and involved bank accounts in [the] State of Texas."[63] The Trustee, for his part, concedes that "[a]ll or at least a great majority of the transfers at issue . . . involved, at least in part, [] accounts at Amarillo National Bank," and the Operative Complaint alleges that receipt of the transferred funds "occurred in Texas for all transfers challenged herein."[64]

Where the transferred funds *originated* from and where the transfers were *executed* is less clear. The movants' declarations state what "would have been" true if

[61] ECF No. 12 ¶ 20; ECF No. 61-1 ¶¶ 13, 21, 23; ECF No. 61-2 ¶¶ 4, 6, 8.

[62] ECF No. 31-5 ¶ 10; ECF No. 31-6 ¶ 10.

[63] ECF No. 33 ¶ 10.

[64] ECF No. 61-1 ¶ 26; ECF No. 12 ¶ 240(b) ("TUFTA itself provides that a transfer of cash, non-real estate, or other assets occurs when the transferee actually receives the funds. That occurred in Texas for all transfers challenged herein.").

transfers were made, rather than what was done.[65] That is the showing *Bruck* holds insufficient. 30 F.4th at 434. Each also rests on the premise that Cox Operating's principal place of business was in Texas, which is disputed. Dykes declares from personal knowledge that the New Orleans office "was the nerve center for Cox Operating and Cox Affiliates' day-to-day operations until shortly before" the petition date, that it housed the company's accounting, operations, human resources, engineering, and geological departments, and that the Dallas office "was primarily used by" two of the individual defendants.[66] The Trustee declares that the transfers "were executed by persons in the New Orleans office of Cox Operating."[67]

The Court need not resolve that conflict. Although "[c]onsiderations such as 'the location of the injury, witnesses, and the [p]laintiff's residence'" serve as "useful proxies for determining what local interests exist in each venue," they "can never subsume the ultimate inquiry." *Clarke*, 94 F.4th at 511 (alterations in original) (quoting *Bruck*, 30 F.4th at 435). And even accepting the movants' evidence in full, it merely establishes some degree of Texas interest. It does not displace Louisiana's interest. Cox Operating was a Louisiana company that employed Louisiana workers, operated wells in Louisiana waters and on the shelf adjacent to Louisiana, and maintained offices at six Louisiana locations. At least 241 Louisiana creditors are owed approximately $150 million.

---

[65] ECF No. 31-5 ¶ 10; ECF No. 31-6 ¶ 10.
[66] ECF No. 61-2 ¶¶ 4, 7–8.
[67] ECF No. 61-1 ¶ 26.

**Familiarity with the governing law is neutral.** The movants say this case "involves questions of Texas law."[68] That is true. But it also involves questions of federal, Louisiana, and Colorado law. Sixteen counts concern 11 U.S.C. § 548 and another concerns 11 U.S.C. § 547.[69] Eighteen counts arise under the Texas Uniform Fraudulent Transfer Act and one under the Texas Business Organizations Code.[70] Another arises under the Colorado Uniform Fraudulent Transfer Act.[71] Four more arise under Louisiana law.[72] Neither district has a clear advantage across that mix, and federal judges "routinely apply the law of a State other than the State in which they sit." *Bruck*, 30 F.4th at 436 (citation omitted). Both districts sit in the Fifth Circuit and apply the same federal law.

**Conflict of laws does not favor either forum.** Neither side develops this factor, and the Court finds it neutral.

* * *

In sum, compulsory process and local interest weigh against transfer. The cost of attendance for willing witnesses, access to sources of proof, the remaining practical problems, court congestion, familiarity with the governing law, and conflict of laws are neutral. The Court concludes that the movants have not "clearly demonstrate[d]" that transfer is "[f]or the convenience of parties and witnesses, in the interest of justice" under 28 U.S.C. § 1404(a). *Volkswagen II*, 545 F.3d at 315.

---

[68] ECF Nos. 31-1 at 10; 86-1 at 9.
[69] *See* ECF No. 113 at 14 n.46.
[70] *See id.* at 14 n.47.
[71] *See id.*
[72] *See id.*

### E. The Movants Have Not Shown by a Preponderance Under 28 U.S.C. § 1412 That Transfer Would Serve the Interest of Justice or the Convenience of the Parties.

#### 1. The Interest of Justice Does not Support Transfer.

**The efficiency and economics of estate administration weigh against transfer.** This factor is "the most important consideration" in the § 1412 transfer analysis, *Commonwealth Oil*, 596 F.2d at 1247, and measures what transfer would cost or save the *estate*. *See Directory Distrib. Assocs.*, 566 B.R. at 880; *In re Think3, Inc.*, 529 B.R. 147, 209 (Bankr. W.D. Tex. 2015). For example, it favored transfer in *Directory Distributing*, where the debtor itself moved and would "save precious estate funds litigating the Texas Proceeding in its hometown, thereby maximizing the distribution to creditors." 566 B.R. at 879–80. It cut against transfer in *Think3*, where the estate's successor opposed transfer and the "cost to Plaintiff Trust . . . would be higher if th[e] adversary proceeding were transferred," which "will likely reduce the recovery (if any) to creditors." 529 B.R. at 209. In each, the party speaking for the estate supplied evidence of what the estate would spend.

The movants offer nothing to support that the Southern District of Texas would be a more cost-efficient forum for the estate. They do not identify an expense the estate would avoid in Houston, a professional whose rates or travel would change, or any sum the estates would save. What they offer instead is a conclusory assertion that "adjudicating the Adversary Proceeding in the same federal district as the

bankruptcy cases promotes the economic and efficient administration of the bankruptcy estates" because it will "minimize administrative expense."[73]

The record is to the contrary. The Trustee's special litigation counsel is in New Orleans and his general counsel is in Baton Rouge.[74] Transfer requires them to travel. The estates' records are electronic and "have been easily shared with, and accessed by, [Trustee's] Louisiana counsel and Louisiana-based consultants."[75] And the Trustee states that in selecting a forum he "gave painstaking consideration to which of the available venues, including but not limited to the Southern District of Texas and the Eastern District of Louisiana, would serve the best interests of the Debtors' estate and the Debtors' creditors and provide the most expedited schedule from filing of the initial complaint through trial," and concluded that this Court does so.[76] The Court does not treat the Trustee's judgment as dispositive, but it is the sole record evidence addressed to the estates' interest and it points away from transfer.

**The presumption in favor of the home court slightly favors transfer.** Courts recognize a presumption "that the district in which the underlying bankruptcy case is pending is the appropriate district for determination of an adversary proceeding." *Think3*, 529 B.R. at 208. The rationale is "that it is preferable for the court that has jurisdiction over the bankruptcy case to adjudicate adversary proceedings relating to the bankruptcy case." *Id.* at 209. Courts in this district have regularly applied this presumption in favor of transfer. *See, e.g.*, *Marquette*, 2006 WL

[73] ECF No. 94 at 1, 6.
[74] ECF No. 61-1 ¶ 8.
[75] *Id.* ¶ 12.
[76] *Id.* ¶ 23.

2349461, at *4–*5; *Bayou Steel Corp. v. Boltex Mfg. Co., L.P.*, No. 03-1045, 2003 WL 21276338, at *1 (E.D. La. June 2, 2003). The consolidated bankruptcy case is pending in the Southern District of Texas, and the Court assumes the presumption applies here.

It does not, however, carry the weight the movants ask the Court to give it. Courts that apply the presumption do not treat it as dispositive. *Think3* itself cautions that "the location of the debtor's bankruptcy case is not the only factor to evaluate to determine whether venue should be transferred." 529 B.R. at 208 (citation omitted). And another court in this district described arguments emphasizing the presumption as "overstated, at best" where the claim is related to rather than arising under title 11 and observed that, even where it applies, it "is but one factor among many that should be considered in deciding whether to transfer venue." *Shaffer*, 563 B.R. at 204; *see also Petroleum Eng'rs, Inc. v. Axis Onshore, L.P.*, No. 11-369, 2011 WL 7083662, at *4 (M.D. La. Dec. 14, 2011), *R & R adopted* No. 11-369, 2012 WL 201726 (M.D. La. Jan. 23, 2012) ("[A]s a 'related to' matter, the court questions the applicability of the 'home court' presumption favoring transfer to the court adjudicating the bankruptcy."). The Court accordingly weighs this factor slightly in the movants' favor.

**Judicial economy and efficiency are neutral.** This factor takes in "the home court's familiarity with the substantive issues and familiarity with the law to be applied in the proceeding (*i.e.*, 'the learning curve'); the caseload of the respective courts . . . [and] the respective availability of the courts for resolving discovery

disputes and for moving the case toward trial at a reasonable pace." *Think3*, 529 B.R. at 209 (citation modified).

The bankruptcy court in Texas is administering these estates and has presided over the Trustee's other avoidance litigation, and parties to a bankruptcy case have occasion to appear there. That ordinarily favors transfer, but two considerations temper it. The learning-curve concern is modest, because "[b]ankruptcy courts are regularly called upon to decide issues of corporate law of another state," *id.*, and neither district faces an unfamiliar body of law here. And this Court has already resolved subject-matter jurisdiction over this proceeding and personal jurisdiction as to seventeen defendants, after full briefing.[77]

The movants' fullest version of this argument comes from *Directory Distributing*, where judicial economy favored transfer because the debtor "will necessarily be filing and attempting to obtain confirmation of a plan of reorganization," so that the plaintiffs' claims "will be the subject of hearings to be held in the Missouri Court," including possible estimation under 11 U.S.C. § 502(c)(1). 566 B.R. at 880–81. The underlying bankruptcy is a Chapter 7 liquidation. There is no plan, no confirmation process, and no estimation of these defendants' claims, because these defendants are not claimants against the estates.

**Fairness and the ability to receive a fair trial are neutral.** No party suggests that either district would deny any party a fair trial.

---

[77] ECF No. 113.

**The state's interest in having local controversies decided within its borders weighs against transfer.** As discussed above,[78] this factor weighs against transfer to the Southern District of Texas.

**The Trustee's original choice of forum weighs against transfer.** Courts "typically give[] great weight to Plaintiff's choice of forum," though "a transfer is nonetheless appropriate if it is in the interest of justice or for the convenience of the parties." *Campbell*, 2015 WL 3657627, at *3. No movant argues that the Trustee's choice deserves less deference than that of any other plaintiff, and the Court finds no basis for reducing it. And a trustee is not merely the debtor's successor, but "much more both in the extraordinary rights with which the Bankruptcy Act invests him, and as a general representative of the creditors." *Coleman v. Alcock*, 272 F.2d 618, 621–22 (5th Cir. 1959). He is also charged with a "duty to maximize the value of the estate." *Matter of VCR I, L.L.C.*, 922 F.3d 323, 327 (5th Cir. 2019) (citation omitted).

The movants respond by invoking *In re Cox Operating*, where the bankruptcy court in this district deferred to "the debtors' choice of forum" and sent the bankruptcy cases to Texas. 652 B.R. at 59. That decision does not carry over. It transferred *cases* under Bankruptcy Rule 1014(b) and analyzed venue under 28 U.S.C. § 1408, the venue statute for cases. *Id.* at 54–55. This is a *proceeding*, and § 1409 supplies its venue rule. It also expressly declined to apply the ordinary movant's burden, observing that with competing motions under Rule 1014(b) "it is not entirely clear which party, if any, bears the burden," and that the question was "best viewed in

[78] *See supra* Part II.D.2.

terms of deference . . . as opposed to burden of proof." *Id.* at 55–56. Its reasoning turned on circumstances that are not relevant here, *e.g.*, debtor-in-possession financing, an immediate going-concern sale process, and the risk that retaining the cases would appear to advantage the petitioning creditors "over all other stakeholders." *Id.* at 59.

The sale closed and the cases converted to Chapter 7 in February 2024. And the deference ran to the debtors, whose officers and affiliates are the defendants here whereas the Trustee represents the creditors. That court also observed that "there is little upon which to base a venue determination," and that "[i]t is not in the interest of justice merely to swap one party's perceived home field advantage for another." *Id.*

* * *

One factor, the home-court presumption, slightly favors transfer. Three weigh against it: the economics of estate administration, which is the most important consideration, the Trustee's choice of forum, and the state's interest in deciding local controversies. Fairness and efficiency are neutral. Accordingly, the Court cannot find it more likely than not that transfer would serve the interest of justice.

### 2. The Convenience of the Parties does not Support Transfer.

**The location of the parties slightly favors transfer.** Brad Cox, Sanders, Winkler, and Graham reside in Texas, and the entity defendants that have addressed the question state that their principal places of business are in Dallas.[79] The Trustee resides in Texas.[80] Six of the entity defendants are organized under Louisiana law,

[79] ECF No. 12 ¶¶ 27–28, 30; ECF No. 33 ¶ 3; ECF No. 31-5 ¶¶ 7–9; ECF No. 31-6 ¶¶ 7–9.
[80] ECF No. 61-1 ¶ 2.

though the same declaration places their principal places of business in Dallas.[81] DeVito resides in Virginia.[82] On balance, this factor slightly favors transfer.

**Ease of access to necessary proof is neutral.** The movants' showing is that they understand records to be in Texas, which is not an actual showing, and no movant identifies physical records or their location.[83] The Trustee has established that the debtors' records are electronic and accessible to his Louisiana professionals, and that the secured lender's records are electronic and available here.[84]

**The convenience of witnesses is neutral.** The movants' expected witnesses are in Dallas, which lies in a district no movant asked for, and the Trustee's witnesses are in Louisiana and Mississippi.[85]

**The availability of subpoena power over unwilling witnesses weighs against transfer.** As explained above,[86] the record places the greater balance of non-party witnesses within this Court's trial subpoena power and outside the transferee court's: five Louisiana trade creditors with records custodians in four Louisiana parishes, and the former Cox Operating employees who staffed the accounting and operations departments in New Orleans.

---

[81] ECF No. 12 ¶¶ 37, 39, 46, 47, 48, 52; ECF No. 31-5 ¶ 9.
[82] ECF No. 31-6 ¶ 3.
[83] ECF No. 31-5 ¶ 12; ECF No. 31-6 ¶ 12; ECF No. 33 ¶ 13.
[84] ECF No. 61-1 ¶ 12; ECF No. 61-3 ¶ 4.
[85] ECF No. 32-1 at 12; ECF No. 61-2 ¶¶ 1, 11; ECF No. 61-4 ¶ 1; ECF No. 61-5 ¶ 1; ECF No. 61-6 ¶ 1; ECF No. 61-7 ¶ 1; ECF No. 61-8 ¶ 1; *see also supra* Part II.D.1.
[86] *See supra* Part II.D.1.

**The expense related to obtaining witnesses is neutral.** No party has quantified the expense of obtaining witnesses or argued that obtaining witnesses would be more costly in one forum versus the other.

* * *

In sum, one factor slightly favors transfer, one weighs against it, and three are neutral. The movants have not shown it more likely than not that transfer would serve the convenience of the parties. Because the movants have established neither ground, transfer under § 1412 is not warranted.

## III. CONCLUSION

Accordingly,

**IT IS ORDERED** that the Motion[87] to Transfer Venue filed by Brad E. Cox; Vincent DeVito; Cox Interests, LLC; Cox Investment Partners, LP; Cox Gathering LLC; Cox Management Dallas, LLC; Cox Oil and Gas, LLC; Cox Oil, LLC; CW Facilities, LLC; Dallas Estate Management, LLC; Flow Line Transportation, LLC; Half Moon Lake, L.L.C.; Lochridge Energy Services P&A, LLC; LSC 27 LLC; Phoenix Petro Services, LLC; Proteus Energy LLC; and Quarantine Bay LLC is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion[88] to Change Venue to the Southern District of Texas filed by William Graham, in his capacities as trustee of the Bradley Edwin Cox Trust, co-trustee of the Charlee Lochridge Cox Dynasty Trust, and trustee of the Edwin L. Cox "B" Trust; EasTex Deer Meadow, LLC; Windward

[87] ECF No. 31.
[88] ECF No. 32.

Capital Assets, LLC; WIN Management LLC; RCL Capital Management LLC – Series No. 10 (Southern Bay); and RCL Capital Management LLC – Series No. 7 (Pelican) is **DENIED**.

**IT IS FURTHER ORDERED** that Joseph Winkler's Motion[89] to Transfer Venue Pursuant to 28 U.S.C. § 1412 is **DENIED**.

**IT IS FURTHER ORDERED** that Craig Sanders's Motion[90] to Transfer Venue, filed individually and in his capacity as co-trustee of the Charlee Lochridge Cox Dynasty Trust, is **DENIED**.

New Orleans, Louisiana, this 24th day of August, 2026.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

[89] ECF No. 76.
[90] ECF No. 86.